**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **26-CR-24-1** |
| **JESUS SANCHEZ** | : | |

## GOVERNMENT'S MOTION FOR RECONSIDERATION OF PRETRIAL DETENTION

On Wednesday, February 4, 2025, this Court released the defendant on home confinement and other conditions. Based on the offenses charged in the indictment, the defendant's continued pattern of illegal activity since the age of 15, possession of firearms, access to firearms, and self-identified association with a well-known, violent drug trafficking gang, we respectfully request reconsideration of the government's motion for detention.

The defendant is a three-time convicted felon—two of those offenses for possession of a firearm, one with a drum magazine holding 58 rounds of ammunition and the other with an extended magazine holding 21 rounds of ammunition—who has clear ties to a long-running drug stash house that in October, 2025 contained more than 6 kilograms of cocaine, 513.8 grams of crack cocaine, 2.898 pounds of marijuana, cutting agents, and a kilo press. The defendant is charged by indictment with possessing *146 rounds of live ammunition* in his home in three separate magazines, found alongside a ballistics vest. Seventy-five of those rounds were housed in a "drum magazine" and loaded with 7.62 ammunition that is designed to fit and function in the long gun that the defendant is holding in the below picture, which says "GANGS" on the side of it. The metadata associated with this photograph relates to July 2025, just two months before the defendant's arrest and was found on the defendant's phone.[1]

---

[1] The photographs included throughout this motion originate from a partial extraction of the defendant's phone.



The defendant is a self-identified member of a violent street gang known as "7th and Russell,"[2] a gang that "wars" with both Weymouth[3] and WYO.[4] Exhibit 2 is a photograph of the defendant throwing up the "7" gang sign, wearing distinctive Louis Vuitton shoes. Those same shoes appear in multiple photographs on the defendant's phone, including photographs of a long gun (Exhibit 3 – different than the long gun the defendant is holding in Exhibit 1) and bulk narcotics (Exhibit 4). Exhibits 8-10 (attached) contain additional photographs of the defendant flashing the same gang sign.



---

[2] On a local prison call just two weeks after his arrest, the defendant was complaining about access to funds for commissary and told someone else, "I look like a broke ass 7th Street n**** right now."

On the defendant's opensource TikTok page—username Hot Boy 7 @hotboyy777—he identifies as "PHILLY7." In numerous posts depicting the defendant with money and guns (labeled as "props"), he uses the hashtag "7st." In another post, he wrote, "Every time they gotta buckle up passing the 7." A sampling of the videos of the defendant with guns will be provided to the Court along with this motion.

[3] *See* 33 Alleged Members of Violent Kensington Drug Trafficking Organization [Weymouth] Charged in a 41-Count Indictment https://www.justice.gov/usao-edpa/pr/33-alleged-members-violent-kensington-drug-trafficking-organization-charged-41-count

[4] *See* American Confidential – "The Philly Gang War That Hit Puerto Rico – WYO vs. 7th/Russell" – available at: https://www.youtube.com/watch?v=BP1xXFp3fc8

Exhibit 3- Photograph of a long gun and the Louis Vuitton shoes with metadata linking to July 24, 2025 (two months prior to arrest)



Exhibit 4 – Photograph of bulk narcotics and the Louis Vuitton sneakers with metadata linking to

July 31, 2025 (two months prior to arrest)



Exhibit 5 – Group photo with associated metadata of August 17, 2025, where the defendant is

again wearing the Louis Vuitton shoes. One individual is displaying the "7" sign.



Exhibit 6 – A screenshot of an Instagram photograph (located on the defendant's phone) featuring the defendant pointing two different firearms at the camera, equipped with laser sights.



Exhibit 7 – A screenshot of a text conversation where the defendant's paramour—the same woman who verified the defendant's information in the pre-trial services report and who the defendant is living with while on home confinement—discusses the ongoing gang war between 7th and Russell and "WYO" and "Weymouth." In the messages, she states "My bd [babydad] 7th n Rusell that's his ops [referring to WYO]. . . WYO really hates Jesus."



As of now, based on a limited, partial extraction of the defendant's phone, investigators located photographs of at least 10 different guns on the defendant's phone. These photographs are attached as Exhibit 8. All of the photographs in Exhibit 8 contain metadata related to August or September 2025, immediately prior to the defendant's arrest in this case. As we argued at the original detention hearing, it is the government's contention that the defendant either removed the guns from his home after USMS raided the stash house on the morning of October 2, 2025 (there were at least seven hours separating the original search and the search of the defendant's house) or the defendant stored his firearms in another location nearby. Regardless, the photographs submitted and open-source social media videos depicting the defendant with numerous firearms demonstrate that the defendant enjoys unfettered access to a wide variety of weapons and has enjoyed this access since at least 2021 when he was convicted of possessing a ghost gun loaded with a drum magazine containing 53 rounds of ammunition. There is every reason to believe that he would maintain this same access if he is permitted to remain on pretrial release.

The defendant also has the ability to flee the jurisdiction, though neither the government nor pre-trial services have insight into the defendant's source of income outside of drug dealing. The Department of Labor reports absolutely no work history for the defendant. Not a single record. And the defendant provided no explanation or legal source of income when interviewed by pre-trial services. Yet he appears to have significant resources. *See* Exhibit 9 (numerous photographs of the defendant with stacks of cash, all located on his phone).

In addition to hiring private counsel in this case, the defendant's CashApp records reflect more than $40,000 in peer-to-peer transactions in the last two years, which is consistent with

drug trafficking transactions. As evidenced in the photographs included in this motion and the

discovery in this case, the defendant owns expensive clothing and computers and lived in a

newly renovated home. On the defendant's local prison calls, one of his primary concerns was

determining who was in possession of his chain and his watch and what would happen with his

new "Draco" chain, which is at his "jeweler." *See* Exhibit 10 (photographs of the defendant

wearing a bejeweled "Draco" firearm chain). Leading up to the dates of his preliminary hearing,

the defendant told his mother that his "security" would pick her up and transport her for the

hearing; court records for the individual providing the "security" indicate that he is a firearm

owner who acts as a driver for other individuals purportedly under Pennsylvania Act 235, which

provides for the training and licensing of watch guards, protective patrolmen, detectives, and

criminal investigators.[5]  In short, the defendant clearly has access to substantial resources but did

not report any those resources or assets to pre-trial services.

     Moreover, the charges in this case carry a *presumption* that there is no combination of

conditions that will protect the public and ensure the defendant's appearance in court. The

defendant has not rebutted that presumption and the government has presented overwhelming

evidence of the danger the defendant presents to the community and his ability to flee given

undisclosed sources of income and the increased risk of flight presented by the mandatory

minimum sentence of 10 years' imprisonment that he faces in this case.

     The defendant's criminal history—including multiple juvenile contacts for weapons and

---

[5] This individual, S.M., was arrested by Philadelphia Police on October 15, 2025. He stated that he was "working security" and acting as a chauffeur for the two backseat passengers. He stated that drove them from Philadelphia to a mall in New York and then a mall in New Jersey before returning to Philadelphia. Police located three large suitcases in the trunk of the car; he stated they belonged to the passengers. Inside of the suitcases, officers recovered more than 20 kilograms of marijuana. S.M.—the defendant's "security"—is now awaiting trial on gun and drug charges.

drugs and adult convictions for two different firearms and fleeing police in a stolen vehicle—also weighs in favor of detention in this matter. The defendant has been on some sort of court-ordered supervision since he was 15 years old and violated that supervision on at least seven different occasions, including the instant arrest. He has proven time and time again that he is not amenable to supervision. Given the defendant's history, access to weapons, self-proclaimed association with the 7th and Russell street gang, and presumption of detention, we respectfully submit that the presumption cannot be rebutted and that the defendant should be detained pending trial in this matter.

Respectfully submitted,

David Metcalf
United States Attorney


/s/ Ashley N. Martin_____
Ashley N. Martin
Kwambina Coker
Assistant United States Attorneys


Dated: February 7, 2026

# EXHIBIT 8









15











**Exhibit 9 – Defendant with a stack of cash, throwing the "7" gang sign**









**Exhibit 10 – Defendant with "Draco" chain, throwing a "7" gang sign**

